The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. Defendants have shown good ground to reconsider the evidence. The Full Commission accordingly reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Travelers Insurance Company is the carrier on risk.
4. Plaintiffs average weekly wage was $1,588.93 yielding a compensation rate of $512.00.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of the following: documentation from Camile Warren, M.D.; Donna Shull, PAC and U.S. Health Works; documentation from Rehability; documentation from James E. Foster, M.D.; and documentation from John Ternes, M.D.
6. Plaintiff suffered an incident involving his left shoulder at work on November 2, 1997.
7. Plaintiffs employment was terminated by defendant-employer on May 1, 1998.
8. An Industrial Commission Form 19 dated November 17, 1997 was stipulated into evidence.
9. An Industrial Commission Form 18 dated December 13, 1997 was stipulated into evidence.
10. The issues before the Deputy Commissioner were: (i) whether plaintiffs injury was by accident or as a result of repetitive motion; (ii) and if so, what compensation, if any, is due plaintiff; and what are the appropriate attorneys fees for defendant-employers failure to comply with discovery in this matter?
11. After the hearing before the Deputy Commissioner, time was allowed for the taking of the depositions of John P. Ternes, M.D., and James E. Foster, M.D., which were made a part of the evidentiary record.
***********
The Full Commission rejects the finding of fact found by the Deputy Commissioner and based upon all evidence of record and the reasonable inferences therefrom, finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 29 years old. Plaintiff has received a high school education and obtained a Machinist Certification from Central Piedmont Community College in 1990.
2. Plaintiff began his employment with defendant-employer in September 1992 as a machinist. Plaintiffs duties with defendant-employer involved loading castings, quality control and trouble shooting. Plaintiff worked third shift and rotated through departments and jobs.
3. On November 2, 1997, plaintiff was loading eight-pound castings from a "tilt-stand onto a pallet to send to a machine. Plaintiff took the castings out of a box that was located on the "tilt-stand for easy access. The castings were not neatly stacked in the box and would generally stick together and fall apart as they were lifted. This was a common occurrence. Due to plaintiffs height, he would usually lean down to reach into the box and pull out the castings.
4. On November 2, 1997, there were two castings left in the box and when plaintiff reached into the box and lifted the castings that were of a normal weight from the "tilt-stand, the castings stuck together and fell apart as they had done in the past. However, on this occasion plaintiff felt pain in his left shoulder and believed he had dislocated it. Plaintiff pushed his shoulder back into place by pressing against a door. Thereafter, plaintiff continued working for ten to fifteen minutes using his right arm but his shoulder again dislocated.
5. Plaintiff normally reached into the casting box approximately one hundred times per night. However, he rotated nightly through different departments and jobs that required heavier lifting. Due to plaintiffs height he always bent down to reach into the casting box regardless of the weight of the castings. There was nothing unusual about the weight of the castings even though they stuck together since plaintiff was accustomed to lifting heavier weight and accustomed to castings sticking together.
6. Since November 2, 1997, plaintiff has experienced continued problems with his left shoulder dislocating without lifting or pulling on the shoulder.
7. Plaintiff normally worked forty-eight (48) hours over seven straight days and then was off for seven (7) days. Plaintiff would return and work thirty-six (36) hours over the next seven (7) days.
8. Plaintiffs pain increased requiring him to be out of work the night of November 2, 1997. Plaintiff took vacation days on November 3 and November 4, 1997. Plaintiff then had a seven-day period off from work.
9. Plaintiff returned to work on November 13, 1997 but was unable to perform his normal work. Plaintiff was also not able to do light duty because of pain in his left shoulder and weakness.
10. Plaintiff was unable to work after November 13, 1997 and was paid short-term disability benefits until he returned to work for defendant-employer on April 12, 1998.
11. Defendant-employer terminated plaintiff on May 1, 1998 because defendant-employer closed the plant in which plaintiff was employed.
12. Plaintiff received unemployment compensation benefits in the amount of $320.00 per week for sixteen (16) weeks.
13. Plaintiff enrolled in Central Piedmont Community College taking computer classes. Plaintiff received an Associate Degree in Network Administration.
14. On November 23, 1998, plaintiff began working for Stafftime, Inc. at Pneaumafil. Plaintiff earned $405.00 for the week ending December 4, 1998 and $340.80 for week ending December 11, 1998.
15. Plaintiff resigned from Stafftime, Inc. on December 4, 1998 for reasons unrelated to the November 2, 1997 incident.
16. On December 21, 1998, plaintiff began working for Kaiser Flund Technology as a machinist for aircraft. Plaintiff earned $15.30 for a 40-hour week minimum. Plaintiff had previously worked for $16.16 with defendant-employer.
17. Plaintiff received medical treatment from U.S. Healthworks on November 3, 1997. Plaintiff indicated his left shoulder popped out of socket two times at work the prior night and once that morning while he was sleeping. Plaintiff was sent for physical therapy.
18. On November 3, 1997, an x-ray was taken of plaintiffs left shoulder that indicated that there was no bone, joint or soft tissue abnormalities.
19. On November 3, 1997, Camille Warren, M.D., gave plaintiff work restrictions indicating plaintiff was not able to return to regular duty because such activity would aggravate plaintiffs condition.
20. Plaintiff went to Rehability for physical therapy on November 18, 1997 at which time the initial evaluation indicated plaintiff had unstable shoulder.
21. Plaintiff was unable to complete physical therapy prescribed because his workers compensation claim had been denied.
22. Plaintiff was referred to Charlotte Orthopedic Specialists for an orthopedic evaluation. This evaluation was cancelled because the workers compensation was denied.
23. Plaintiff sought medical assistance from Nalle Clinic on November 26, 1997. Plaintiff was again diagnosed with a dislocation that would most likely require operative repair.
24. On December 4, 1997, plaintiff was evaluated by James E. Foster, M.D., at which time he again indicated that he had injured his left shoulder while lifting castings at work. Dr. Foster requested an MRI that indicated that plaintiff had Hill-Sachs and Bankart lesions with avulsion of the anterior inferior labrum.
25. Dr. Foster indicated to plaintiff that his regular work would continue to aggravate his condition. Dr. Foster referred plaintiff to John P. Ternes, M.D.
26. On December 31, 1997, Dr. Ternes examined plaintiff and determined that he had a dislocation of his left shoulder.
27. On January 22, 1998, plaintiff underwent surgery for shoulder reconstruction.
28. Dr. Ternes continued to treat plaintiff after he had performed surgery. Dr. Ternes advised plaintiff not to use his left arm and to seek physical therapy.
29. On April 3, 1998, Dr. Ternes released plaintiff to return to restricted duty with a five pound weight lifting restriction on his left arm. Plaintiff sustained a twenty percent permanent partial disability to his left arm as a result of the incident on November 2, 1997.
30. Plaintiff underwent physical therapy at the Nalle Clinic from February 6, 1998, through April 3, 1998.
31. Even though Dr. Ternes and Dr. Foster determined plaintiffs work activity for defendant-employer could have aggravated a pre-existing condition that made plaintiffs left shoulder likely to dislocate or sublux and the fraying of the labrum, the greater weight of the evidence fails to establish that plaintiff suffered from a pre-existing condition. Moreover, there is no medical evidence that plaintiffs employment placed him at an increased risk of developing a shoulder condition.
32. Although plaintiff suffered an incident involving his left shoulder on November 2, 1997, he did not sustain an interruption of his normal work routine constituting an injury by accident with in the meaning of the Act.
33. Plaintiffs former counsel who is now deceased spent a significant amount of time to obtain discovery in this matter. Defendants willfully failed to comply with discovery request and plaintiff is entitled to reasonable attorneys fee for his counsels effort.
34. However, considering the nature of the case, the customary attorneys fees and the time expended by plaintiffs former attorney, his fee request in the amount of one-third of plaintiffs recovery is unreasonable.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident within the meaning of the Act. Moreover, the greater weight of the evidence fails to establish the existence of a pre-existing condition. Therefore, any possible aggravation of a pre-existing condition, which may have occurred as a result of the incident, is likewise not compensable. N.C.G.S. 97-2(6) and Dye v. Shippers Freight Lines, 118 N.C. App. 280,454 S.E.2d 845 (1995).
2. Furthermore, plaintiff has failed to prove that he sustained an occupational disease as a result of his employment with defendant-employer. N.C.G.S. 97-53.
3. Defendants shall pay $1,500.00 to plaintiffs former attorneys estate, if not already paid to plaintiffs former attorney, for defendants willful failure to comply with the discovery request. N.C.G.S. 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiffs claim for workers compensation benefits is hereby and the same shall be Denied.
2. Defendants shall pay $1,500.00 to plaintiffs former attorneys estate, if not already paid to plaintiffs former attorney, for attorneys fees incurred for defendants willful failure to comply with plaintiffs discovery request.
3. Defendants shall pay the costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
DISSENTING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/nwg